### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| NATHANIEL W. CALE, | )<br>)<br>)   Civil Action No.  2:20-cv-1763<br>) |
| Plaintiff, | )   Doc. No.<br>) |
| v. | )   Electronically Filed<br>) |
| KEIM LUMBER COMPANY, | )<br>) |
| Defendant. | )<br>) |

### COMPLAINT

Plaintiff, Nathaniel W. Cale, by and through his counsel, Douglas C. Hart, Esquire, Douglas G. Stadler, Esquire and Burns White LLC, files the within Complaint, averring as follows:

### PARTIES

1.      Plaintiff, Nathaniel W. Cale (hereafter referred to as "Plaintiff" or "Cale"), is an adult individual who resides at 255 Welsh Road, Chartiers Township, Washington County, Pennsylvania 15301 (hereafter referred to as the "Property").

2.      Defendant, Keim Lumber Company (hereafter referred to as "Defendant" or "Keim Lumber"), is an Ohio business corporation with its principal place of business located at 4465 OH-557, Charm, Holmes County, Ohio 44654.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, as (i) complete diversity of citizenship exists between Plaintiff and Defendant, and (ii) the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4.      Venue of this action in this Court is proper pursuant to 28 U.S.C. §1391(b), in that both Plaintiff and Defendant are either located, reside, or regularly conduct business in this judicial district, and the instant action stems from a contract which was entered into between Plaintiff and Defendant within this judicial district.

## FACTUAL AND BACKGROUND

5.      On or about October 22, 2018, Plaintiff, through his wholly owned limited liability company, Brothers Farming, LLC, purchased the real property located at Block and Lot No. 170-011-00-00-0039-03, more commonly known as 255 Welsh Road, in Chartiers Township, Washington County, Pennsylvania (hereafter referred to as the "Property").

6.      In addition, Plaintiff is also the owner of a construction project concerning the development of the aforementioned Property located at 255 Welsh Road and the construction of a single family residence thereon (hereafter referred to as the "Project"), where Plaintiff and his family now reside.

7.      In or around February, 2019, Plaintiff and Keim Lumber entered into an oral contract with relation to the Project, under which Keim Lumber agreed to furnish certain lumber materials for the construction and development of the residential dwelling on the Property, including, but not limited to, boards, joists and trusses to be utilized to install the framing throughout the residential dwelling.

8.      Prior to entering into the oral contract, Plaintiff provided Keim Lumber with a full and complete set of the construction drawings and architectural plans for the Project, and said drawings and plans identified the specific lumber materials to be used in the construction of the residential dwelling.

2

9.      After being provided with the construction drawings and architectural plans for the subject Project, Keim Lumber provided Plaintiff with Quote No. 1204611 on or about February 8, 2019, which identified the lumber materials to be utilized in the construction and development of the Property, as well as the pricing for said lumber materials. A true and correct copy of Quote No. 1204611 from Keim Lumber dated February 8, 2019 is attached hereto as Exhibit A.

10.     Pursuant to its initial quote, Keim Lumber offered to furnish the lumber materials to be utilized on the Project in return for remuneration in the amount of $87,585.49. See Exhibit A, Keim Lumber Quote No. 1204611.

11.     Following certain modifications to the initial quote, as mutually agreed upon between the parties, the agreed upon pricing terms for the lumber materials ultimately furnished by Keim Lumber are illustrated within the invoices that were issued to Plaintiff following the delivery of said lumber materials. True and correct copies of Invoice Nos. 3707550, 3710947 and 3828412, as issued by Keim Lumber to Plaintiff on April 23, 2019, are cumulatively attached hereto as Exhibit B.

12.     In addition to contracting with Keim Lumber to provide the lumber materials for the Project, Plaintiff also contracted with other contractors to perform work on the Project, including Elite Renovations of Holmes, LLC (hereafter "Elite Renovations"), who Plaintiff engaged to frame the residential dwelling.

13.     On or about April 9, 2019, and following Plaintiff's acceptance of Keim Lumber's pricing terms, Keim Lumber made its initial delivery of lumber materials to the Project site, which Elite Renovations utilized to frame and construct the first floor of the subject residential dwelling beginning on April 11, 2019.

3

14.     On or about April 19, 2019, Keim Lumber made its second and final delivery of lumber materials to the Project site, which Elite Renovations utilized to complete the framing of the remainder of the subject residential dwelling.

15.     As consideration and in return for furnishing the lumber materials utilized on the Project, Plaintiff paid remuneration to Keim Lumber in the amount of $93,222.81.  See Exhibit B, Keim Lumber Invoice Nos. 3707550, 3710947 and 3828412.

16.     Elite Renovations completed its construction of the residential dwelling by or before May 6, 2019, at which time the entire residential dwelling was completely framed and the roof of the dwelling was installed.

17.     Following the installation of shingles, doors and windows immediately thereafter, the residential dwelling was completely "closed in" and waterproofed by May 8, 2019, such that the entire process from the initial construction and/or framing of the residential dwelling to being "under roof" took approximately twenty-eight (28) days to complete.

18.     At all relevant times during the Project, the lumber materials purchased by Plaintiff from Keim Lumber were adequately covered and stored at the Project site following delivery, such that said lumber materials were protected from the elements and/or weather at all times prior to being utilized in the construction process.

19.     Over the course of the following months, the construction of the residential dwelling was completed and Plaintiff and his family moved into the Property in February, 2020.

<u>The Defective Materials Sold and Distributed by Keim Lumber</u>

20.     Within a few weeks of moving into the Property in February, 2020, Plaintiff discovered certain unevenness, bowing, movement and dimensional instability in the flooring in the kitchen of the subject Property.

21.    Shortly after discovering the issues concerning the flooring in the kitchen area, Plaintiff discovered similar unevenness, as well as significant bowing, movement and dimensional instability, in the flooring that was installed throughout the remainder of the subject Property.

22.    Over the course of time, the bowing, movement and dimensional instability of the floor joists and lumber materials has continuously worsened, such that the structural integrity of the subject Property is compromised.

23.    In addition, the continuation of the significant bowing, movement and dimensional instability of the floor joists and lumber materials has created a safety hazard for Plaintiff and his family, as the interior and exterior doors of the subject Property do not operate properly and are extremely difficult to open, causing an issue concerning the ingress and egress to and from the interior of the subject Property.

24.    Pursuant to the implied warranty of workmanship and applicable Pennsylvania law, Keim Lumber was obligated to furnish the lumber materials in accordance with the underlying construction drawings and architectural plans for the Project, as well as in accordance with recognized and accepted standards in the construction industry.

25.    Despite these obligations, Keim Lumber Company failed to furnish the lumber materials for the Project in accordance with the underlying construction drawings and specifications, to the extent that the lumber materials furnished are unstable, compromise the structural integrity of the Property, and, ultimately, have created a potentially hazardous situation for Plaintiff and his family.

26.     In that regard, Plaintiff discovered that the joists delivered and distributed by Keim Lumber were not manufactured or "milled" from the lumber material called for and specified within the construction drawings and architectural plans for the Project.

27.     Plaintiff also discovered that the joists and lumber materials purchased from Keim Lumber were delivered and/or distributed with a moisture content that was too high, and that the subject joists and lumber materials were not properly "dried" prior to delivery.

28.     As a result of the defective materials that were supplied and distributed by Keim Lumber for the Project, Plaintiff has been forced to incur, and will continue to incur, significant expenditures to remediate the issue and replace the defective joists and lumber materials.

29.     Moreover, and to further illustrate that Keim Lumber furnished the subject joists and lumber materials with the improper moisture content and before said materials were properly "dried," Plaintiff has discovered the rapid development of mold growth upon certain joists that are easily observable, which also creates a potential safety hazard for Plaintiff and his family.

30.     By failing to properly deliver the joists and lumber materials in accordance with the contract drawings and specifications, as well as the applicable standards of the construction industry, Keim Lumber has materially breached its contractual and warranty obligations to Plaintiff.

31.     As the direct and proximate result of Keim Lumber's material breach of its contractual and warranty obligations, Plaintiff has incurred, and will continue to incur, significant expenditures to remediate the construction defects.

32.     In sum, the defective materials as supplied by Keim Lumber for the Project has caused Plaintiff to sustain significant damages, which, ultimately, has also resulted in the value of the subject Property to be severely diminished.

## COUNT I.     BREACH OF CONTRACT

33.     Paragraphs 1 through 32 of Plaintiff's Complaint are incorporated herein by reference as if fully set forth at length.

34.     As noted above, Plaintiff accepted Keim Lumber's offer and proposal to furnish lumber materials for the Project, thereby forming a contract by and between Plaintiff and Keim Lumber with respect to the Project and the construction of Plaintiff's residence.  See Exhibit A, Keim Lumber Quote No. 1204611; Exhibit B, Keim Lumber Invoice Nos. 3707550, 3710947 and 3828412.

35.     Pursuant to the terms of the contractual agreement entered into between the parties, Plaintiff agreed to pay Keim Lumber the contract sum of $93,222.81 in return for Keim Lumber furnishing the joists and lumber materials in accordance with the construction drawings and architectural plans for the Project.

36.     Plaintiff has fulfilled and satisfied his contractual obligations by paying remuneration to Keim Lumber in accordance with the agreement reached, with said payments totaling $93,222.81.

37.     Keim Lumber, however, has materially breached its contractual obligations to Plaintiff by failing to furnish the joists and lumber materials in accordance with the construction drawings and architectural plans for the Project, as well as applicable construction industry standards.

38.     As a direct and proximate result of Keim Lumber's material breach of its contractual obligations, Plaintiff has sustained significant damages.

39.     Specifically, Plaintiff has been forced to incur, and will continue to incur, substantial expenditures to remediate the construction defects caused by the defective materials sold, supplied and delivered by Keim Lumber for the Project.

40.     Moreover, the defective materials as supplied and distributed by Keim Lumber for the Project has also resulted in the value of the subject Property to be severely diminished.

WHEREFORE, Plaintiff, Nathaniel W. Cale, demands judgment in excess of $75,000.00 in his favor and against Defendant, Keim Lumber Company, plus interest, costs of suit and for such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT II.    NEGLIGENCE

41.     Paragraphs 1 through 40 of Plaintiff's Complaint are incorporated herein by reference as if fully set forth at length.

42.     At all relevant times, Keim Lumber had a duty to supply, deliver and distribute the joists and lumber materials for the Project in accordance with recognized and accepted construction industry standards.

43.     In addition, Keim Lumber at all times had a duty to institute and exercise proper quality control measures to ensure that the that lumber materials being sold, supplied, delivered and distributed to its customers, including Plaintiff, were adequate and in accordance with the applicable construction industry standards.

44.     In sum, Keim Lumber had a duty to supply, deliver and distribute its materials in accordance with the standard of care ordinarily employed by a supply contractor and/or distributor in good standing in its respective specialty.

45.     As alleged more fully in this Complaint, Keim Lumber breached its duty of care to Plaintiff, and acted negligently, by failing to furnish lumber materials in accordance with the

underlying construction drawings and architectural plans, in failing to comply with recognized and accepted construction practices and applicable industry standards, and in failing to furnish lumber materials in a manner to conform with the standard of care ordinarily employed by a supply contractor in good standing in its respective specialty.

46.     As a direct and proximate result of Keim Lumber's negligence, Plaintiff has incurred, and will continue to incur, significant costs and expenses to remediate and repair the construction defects and resulting damages that have occurred as the result of the defective materials supplied by Keim Lumber.

WHEREFORE, Plaintiff, Nathaniel W. Cale, demands judgment in excess of $75,000.00 in his favor and against Defendant, Keim Lumber Company, plus interest, costs of suit and for such other and further relief as this Court deems just and appropriate under the circumstances.

<u>**COUNT III.   BREACH OF WARRANTY**</u>

47.     Paragraphs 1 through 46 of Plaintiff's Complaint are incorporated herein by reference as if fully set forth at length.

48.     When entering into the contractual agreement with Plaintiff, and agreeing to furnish the joists and lumber materials for use on the Project, Keim Lumber impliedly warranted that the materials furnished under the agreement would be of sound quality and in accordance with established, accepted and recognized construction standards.

49.     By furnishing joists and lumber materials that were substandard and failed to conform to the underlying construction drawings and architectural plans, and which materially deviated from recognized and accepted construction industry standards, Keim Lumber has breached its implied warranties to Plaintiff.

50.     Keim Lumber further breached its warranty obligations by failing and refusing to repair and remediate the material defects and deficiencies associated with its defective joists and lumber materials, despite receiving notice of said defects and deficiencies by Plaintiff.

51.     As a direct and proximate result of Keim Lumber's breach of its implied warranties, Plaintiff has incurred, and will continue to incur, significant costs and expenses to remediate and repair the construction defects and resulting damage that has occurred as a result of Keim Lumber's defective and faulty materials.

WHEREFORE, Plaintiff, Nathaniel W. Cale, demands judgment in excess of $75,000.00 in his favor and against Defendant, Keim Lumber Company, plus interest, costs of suit and for such other and further relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted,

BURNS WHITE LLC


/s/ Douglas C. Hart
Douglas C. Hart, Esquire
Pa. I.D. No. 91663
Douglas G. Stadler, Esquire
Pa. I.D. No. 316717
Counsel for Plaintiff,
Nathaniel W. Cale

**JURY TRIAL DEMANDED**

## <u>VERIFICATION</u>

I, Nathaniel W. Cale, have read the foregoing Complaint and verify that the statements contained therein are true and correct to the best of my knowledge, information and belief.

This statement of verification is made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities, which provides that if I made knowingly false averments, I may be subject to criminal penalties.


Nathaniel W. Cale