IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATHANIEL W. CALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 20-1763 |
| v. | ) |
| | ) |
| KEIM LUMBER COMPANY, | ) |
| | ) |
| Defendant. | |

## MEMORANDUM OPINION

Presently before the Court is Defendant Keim Lumber Company's ("Keim Lumber") Motion for Summary Judgment Against Plaintiff Nathaniel W. Cale. (Docket No. 112). The Court has considered the motion, Keim Lumber's brief in support thereof (Docket No. 117), Keim Lumber's Concise Statement of Undisputed Material Facts (Docket No. 116), Plaintiff Nathaniel W. Cale's ("Cale") Concise Statement of Material Facts in Opposition to Keim Lumber's Motion for Summary Judgment (Docket No. 123), Cale's Memorandum of Law in Opposition to Keim Lumber's Motion for Summary Judgment (Docket No. 125), Keim Lumber's Reply Brief (Docket No. 127), Keim Lumber's Response to Cale's Additional Statement of Undisputed Material Facts (Docket No. 129), and Cale's Sur-Reply Brief (Docket No. 132). For the reasons set forth herein, Keim Lumber's summary judgment motion is granted in part and denied in part.

**I. Background**[1]

Cale is the sole and managing member of Brothers Farming, LLC (hereinafter "Brothers Farming"), a single-member limited liability company formed and organized on or about April 28, 2016, in the Commonwealth of Pennsylvania. (Docket No. 123, ¶¶ 23-27). Brothers Farming has

---

[1] The facts herein are taken from the undisputed evidence of record, and the disputed evidence of record is read in the light most favorable to Cale as the non-moving party with respect to Keim Lumber's summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

never had any other owners, members, or managers. (*Id.* ¶ 25). Cale resides at 255 Welsh Road, Chartiers Township, Pennsylvania. (Docket No. 1, ¶ 1). Keim Lumber is an Ohio business corporation with a principal place of business at 4465 OH-557, Charm, in Holmes County, Ohio. (*Id.* ¶ 2). Brothers Farming acquired the real property located at 255 Welsh Road (hereinafter the "Property") in October 2018. (Docket No. 110, ¶ 2 (Joint Stipulations of Fact)).[2] Brothers Farming has also owned two other adjoining parcels in Chartiers Township, but has never held other property or assets. (Docket No. 123, ¶¶ 24, 26). Brothers Farming has, at all times relevant to this matter, been the titled owner of the Property. (Docket No. 123, ¶ 3-4).

This case is about the home that Cale built on the Property in 2019. (Docket No. 116, ¶ 1). Cale intended for the home to be his family's primary residence. (Docket No. 123, ¶ 4). Cale acted as the general contractor for the project of building his home (hereinafter the "Project"). (Docket No. 110, ¶ 3). He subcontracted Elite Renovations, LLC for framing installation work and, at the recommendation of Vernon Hershberger of Elite, opted to use Keim Lumber to supply lumber for the Project. (Docket No. 116, ¶¶ 16-17). Accordingly, Cale provided blueprints to Keim Lumber on January 29, 2019, and requested a quote for a "framing package." (Docket No. 110, ¶ 4). At the time, Cale informed Keim Lumber of his intent to build a home on the Property and that the materials he would personally purchase were going to be used for constructing the residence on the Property. (Docket No. 123, ¶ 32).

Keim Lumber thereafter (February 2019) gave Cale a quote, Quote 1204611, for the framing package. (Docket No. 110, ¶ 5). The Quote identified Cale personally and detailed Keim Lumber's offer of sale for materials (broken into different components of "1st Floor – Floor

---

[2] Cale asserts for the record that while Brothers Farming owns the Property, he "utilized personal funds to complete the transaction," that effected the purchase of the Property, "and no funds were paid through or by Brothers Farming to purchase the subject Property." (Docket No. 123, ¶¶ 28-29).

System," "Garage Walls," "1st Floor Exterior Walls," etc.), for a total of $87,585.49. (Docket No. 110-1 (Ex. A)). The Quote identifies a large quantity of "2x12 … #1 Yellow Pine" as part of the package. (Docket No. 110, ¶ 6). Cale accepted this Quote, and Keim delivered lumber to the Property in April 2019. (*Id.* ¶¶ 7-8). Invoices show that the lumber was shipped to Cale personally at the Property's address. (Docket No. 110-2 (Ex. B); Docket No. 129, ¶ 55). Cale remitted payment to Keim Lumber in the amount of $93,222.81. (Docket No. 129, ¶ 56). At no time did Cale indicate—nor did Keim Lumber ask—whether Cale or anyone else was the titled owner of the Property. (Docket No. 129, ¶ 59).

Keim Lumber admits that before it shipped Cale's framing materials, it did not perform moisture content measurements. (Docket No. 110, ¶ 10; Docket No. 129, ¶ 40). Keim Lumber has no written policies or procedures that dictate its storage practices once it receives lumber from suppliers. (Docket No. 129, ¶ 45). Nor does Keim Lumber monitor the temperature or humidity inside its warehouse to ensure that lumber is maintained in a particular condition prior to sale. (*Id.* ¶ 46). After Cale had received his framing materials, neither Keim Lumber, nor Cale, nor Elite Renovations (his framing installation subcontractor) performed moisture content measurements of the lumber prior to installation. (Docket No. 110, ¶ 12).

Cale and his family were able to move into the completed residence in February 2020. (Docket No. 129, ¶ 60). Though Cale intended the home he had constructed to be his family's "dream home" (Docket No. 123, ¶ 30), he and his family quickly discovered "certain unevenness, bowing and movement" in the kitchen flooring, followed by similar discoveries throughout the home. (Docket No. 129, ¶ 61). Cale has alleged that, over time, the movement in the flooring made it difficult to open doors in the home, which made him fear for his family's well-being. (Docket No. 123, ¶ 64). Cale has further alleged that: in April 2020 he observed a black substance

on certain 2x12s used to construct the first floor of the home; he believed the substance to be black mold; and that, when he had the substance tested, the test confirmed this belief. (Docket No. 123, ¶¶ 65-66).

Cale eventually came to suspect that the problems in his new home were traceable to inadequate drying of the 2x12s he had purchased from Keim Lumber and installed in the home. (*Id.* ¶ 69). He brought this to Keim Lumber's attention by May 2020 (*id.* ¶ 71), and thereafter (August 4th) presented Keim Lumber with a budget for the cost of removing and reinstalling defective 2x12s (and associated restorative work), which—at that time—he estimated would cost $455,725. (*Id.* ¶ 74).[3] Cale had no contact with Keim Lumber after presenting the $455,725 estimate. (*Id.* ¶ 76).

Accordingly, Cale filed his original Complaint in this matter on November 16, 2020, and therein brought three counts against Keim Lumber for Breach of Contract (Count I), Negligence (Count II), and Breach of Warranty (Count III). (Docket No. 1). Cale later amended his complaint to add Intentional Misrepresentation (Count IV), Negligent Misrepresentation (Count V), and Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count VI). (Docket No. 52). Cale has indicated that the additional counts in the Amended Complaint are due to his discovering through his proposed expert Kento Ohmori that numerous 2x12s installed in his home were not up to industry standards and lacked legible grading stamps to confirm their quality. (Docket No. 123, ¶77). For damages, Cale is seeking in excess of $75,000

---

[3] Since that time and the initiation of litigation, Cale has gotten additional estimates for remediating the problems he believes were caused by Keim Lumber's supply of inadequately dried 2x12s. From FSG Franjo Specialty Group, he received an estimate that involves selective demolition of the first and second floors of his home for $1,275,000. (Docket No. 123, ¶ 78-83). From Diamond Custom Homes, Cale obtained an estimate to raze the house and rebuild it from its foundation with an estimated range of costs from $1,200,000 to $1,500,000. (*Id.* ¶ 84-85). And from Sonny Knish, LLC, Cale received an estimate also based on razing the house and rebuilding from the foundation for $1,300,000. (*Id.* ¶ 86-87).

against Keim Lumber, treble damages, reasonable attorneys' fees, interest, costs of suit, and any other relief as this Court would deem just and appropriate under the circumstances. (Docket No. 52).[4]

At this point in the parties' litigation, Keim Lumber and Cale have filed several motions in limine,[5] and Keim Lumber has moved for summary judgment. (Docket No. 112). Cale opposes the motion. (Docket No. 125). As of Cale's filing of his sur-reply on October 9, 2023, Keim Lumber's summary judgment motion is fully briefed and ripe for disposition.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Anderson*, 477 U.S. at 247-48). A dispute pertaining to such a

---

[4] In a Third-Party Amended Complaint, Keim Lumber identified Boise Cascade Building Materials Distribution, LLC ("Boise"), Weyerhaeuser Company ("Weyerhaeuser"), PotlatchDeltic Corporation ("PotlatchDeltic"), and Canfor Southern Pine, Inc. ("Canfor") as its suppliers. (Docket No. 55). Keim Lumber has alleged that "if [it] is found to be liable to [Cale] … then such liability was passive and secondary to the active and primary liability of Boise Cascade, and/or Weyerhaeuser, and/or PotlatchDeltic, and/or Canfor." (*Id.* ¶ 12). Keim Lumber has further alleged that it is "entitled to indemnification from Boise Cascade, and/or Weyerhaeuser, and/or PotlatchDeltic, and/or Canfor in this action for any judgment that is entered against [Keim Lumber] upon [Cale's] Amended Complaint and/or, additionally or in the alternative, Boise Cascade, and/or Weyerhaeuser, and/or PotlatchDeltic, and/or Canfor should be required to contribute an appropriate share towards the payment of any judgment against [Keim Lumber], including attorney fees and costs [Keim Lumber] incurs as a result of this action." (*Id.* ¶ 14). Presently, the Court is considering Keim Lumber's motion for summary judgment with respect to Cale's claims; therefore, the Court need not address the allegations in Keim Lumber's Third-Party Amended Complaint. However, with respect to Keim Lumber's claims against Weyerhaeuser, the Court notes that it granted Keim Lumber and Weyerhaeuser's joint motion to dismiss without prejudice Keim Lumber's Third-Party Complaint with respect to Weyerhaeuser on August 21, 2023. (Docket No. 121).

[5] Keim Lumber has moved to exclude Plaintiff's experts J. Matthew Barone and Kento Ohmori, and Cale has moved to preclude Proffered Expert Testimony and Opinions of Defendants' Expert Harold P. McCutcheon, P.E. (Docket Nos. 93, 94, and 95). By separate order, the Court will deny these motions without prejudice to refiling at a later date.

5

fact is "'genuine' if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. *Boyle*, 139 F.3d at 393; *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011) ("[A]ll justifiable inferences are to be drawn in [the nonmovant's] favor in determining whether a genuine factual question exists." (quoting *Anderson*, 477 U.S. at 255)). The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must "make a showing sufficient to establish the existence of an element essential to that party's case" for those elements "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("*Catrett*"). If the movant "has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain," the burden is on the non-movant "to search the record and detail the material controverting the moving party's position." *Schulz v. Celotex Corp.*, 942 F.2d 204, 210 (3d Cir. 1991). Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial. *See Catrett*, 477 U.S. at 324.

## III. <u>Discussion</u>[6]

Keim Lumber has argued in its summary judgment motion that the Court should dismiss Cale's Amended Complaint because, among other reasons, Cale lacks standing. Keim Lumber points out that Brothers Farming—*not* Cale—owns the Property that is alleged to have been injured by Keim Lumber and that Cale himself has suffered no distinct injury. Keim Lumber also argues: that there is no genuine issue of material fact with respect to its fulfillment of the terms of its contract with Cale insofar as it delivered the lumber that was called for in the Quote that Cale accepted; Cale's common law allegations of negligence, negligent misrepresentation, and intentional misrepresentation are barred by the gist-of-the-action and economic-loss doctrines; there is no evidence of actual misrepresentations to support Cale's allegations of negligent and intentional misrepresentation; there is no evidence of justifiable reliance or that Cale suffered an ascertainable loss for purposes of his UTPCPL claim; and finally that, if Cale is able to survive summary judgment, then his damages will be limited as a matter of law to diminution of market value of the Property due to the injury, rather than the repair cost.

The Court has considered these arguments and Cale's responses in opposition to them. Herein the Court first addresses the parties' arguments with respect to standing in light of the Court's obligation to assure itself of its subject-matter jurisdiction. *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016). Ultimately, standing and prudential considerations attendant thereto are where this Court's inquiry ends.

As indicated above, Keim Lumber has argued that Cale's claims for damages arising from injury to the Property must fail because any injury to the Property harmed Brothers Farming. Thus,

---

[6] This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Keim Lumber is an Ohio business corporation with its principal place of business in Ohio, Cale resides in Pennsylvania, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Keim Lumber argues, Cale has not been injured and cannot establish standing in this suit. Cale acknowledges that he needs standing to sue Keim Lumber, but argues that he meets the requirements of Article III standing and that such standing is not undermined by prudential considerations. He further argues that Keim Lumber misunderstands Pennsylvania law relevant to prudential considerations of standing and that, if Keim Lumber's argument is to be believed, then it would effect an illogical result insofar as neither Cale (as party to the contract with Keim Lumber) nor Brothers Farming (the titled owner of the Property) could pursue certain claims against Keim Lumber.

"Although this [case] is … a diversity case … [the Court] appl[ies] federal law in determining [Cale's] standing because, 'standing to sue in any Article III court is, of course, a federal question.'" *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985)). Article III "limits the jurisdiction of the federal courts to actual cases or controversies." *Greenberg v. Lehocky*, 81 F.4th 376, 384 (3d Cir. 2023) (citing U.S. Const., art. III, § 2, cl. 1). And the case or controversy requirement includes a requirement of "standing to sue." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). As a jurisdictional requirement, standing is reviewable at any time and, "[a]t summary judgment, a plaintiff 'can no longer rest on ... mere allegations, but must set forth by affidavit or other evidence specific facts' establishing standing." *Id.* (quoting *Clapper*, 568 U.S. at 412).

The "irreducible constitutional minimum of standing contains three elements": (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of," *i.e.*, "the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result

8

of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).  The criteria of standing "ensure that plaintiffs have a 'personal stake' or 'interest' in the outcome of the proceedings, 'sufficient to warrant ... their invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on ... their behalf." *Wheeler*, 22 F.3d at 537-38 (cleaned up).

A plaintiff must not only "satisfy … the case and controversy requirements of Article III of the Constitution," but also "certain prudential requirements."  *Id.* at 537.  Prudential considerations of standing "require that: (1) *a litigant 'assert his or her own legal interests rather than those of third parties,'*" *id.* at 538 (quoting *Phillips Petroleum*, 472 U.S. at 804) (emphasis added); "(2) courts 'refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances,'" *id.* (quoting *Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1106 (2d Cir. 1992)); "and (3) a litigant demonstrate that her interests are arguably within the 'zone of interests' intended to be protected by the statute, rule or constitutional provision on which the claim is based."  *Id.* (quoting *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982)).

The Third Circuit addressed Article III and prudential standing requirements at length in *Potter v. Cozen & O'Connor*, 46 F.4th 148 (3d Cir. 2022).  In *Potter*, the Third Circuit considered the district court's dismissal of plaintiff-shareholders' complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction because the shareholders themselves, rather than the limited liability companies ("LLCs") of which they were shareholders, brought the suit.  *Id.* at 152.  The case implicated the shareholder standing rule, *i.e.*, the "longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation

unless the corporation's management has refused to pursue the same action for other reasons than in good-faith business judgment." *Id.* at 154 (quoting *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990)) (also explaining that the shareholder standing rule generally arises out of the third-party standing doctrine).

Reviewing the district court's decision, the Third Circuit explained that the district court had erred in treating "the shareholder standing rule as constitutional and jurisdictional," *id.*, and held "that *the shareholder standing rule is non-jurisdictional*, implicating only a plaintiff's power to bring claims, not the Court's power to hear them." *Id.* at 155 (emphasis added). The Third Circuit grounded its holding in Supreme Court precedent, *id.* at 155-57, its own precedential opinions, *id.* at 156-57, and the nature of derivative shareholder harm. *Id.* at 157. Concerning the nature of derivative shareholder harm, the Third Circuit acknowledged that when an LLC experiences a "direct financial injury," shareholders experience an indirect financial injury insofar as the value of their ownership interests are diminished. *Id.* Thus, in *Potter* where the plaintiff-shareholders alleged the defendants caused them to sell LLCs substantially below fair market value, the Third Circuit explained that the plaintiff-shareholders met the minimum criteria for constitutional standing because their alleged injury was actual, concrete, and particularized; allegedly caused by the defendants' challenged conduct; and "if proven at trial, [could] be redressed by the court through a damages award." *Id.*

Critically, however, the Third Circuit's decision with respect to constitutional standing in *Potter* did not end the inquiry into whether the plaintiff-shareholders in that case could bring the suit. The Third Circuit ultimately remanded the case for the district court to consider a shareholder standing challenge pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* at 157-58.[7] On remand, the district

---

[7] The distinction—between constitutional standing and the prudential shareholder standing rule—was critical in its implications for remand in that it permitted the district court to consider the possibility of

10

court considered the defendants' motion to dismiss based on plaintiff-shareholders' lack of prudential standing pursuant to Fed. R. Civ. P. 12(b)(6), and ultimately determined that the plaintiff-shareholders alleged only "damages suffered by the non-party Companies." *Potter v. O'Connor,* No. CV 20-1825, 2023 WL 2054264, at *3 (E.D. Pa. Feb. 16, 2023). The district court explained that even though the plaintiff-shareholders "collectively owned 100% of the outstanding stock/membership interests in the non-party Companies, such status … [did] not confer standing … to assert claims belonging to the non-party Companies." *Id.*

The district court further explained that under applicable substantive state law "a shareholder does not have standing to institute a direct suit for a harm that is peculiar to the corporation and that is only indirectly injurious to the shareholder." *Id.* (quoting *Hill v. Ofalt*, 85 A.3d 540, 548 (Pa. Super. Ct. 2014)).[8] Rather, "to sue individually, the shareholder must allege a direct, personal injury—that is, independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery." *Id.* at *4 (quoting *Hill*, 85 A.3d at 548-49). On remand the plaintiff-shareholders had argued that they could avail themselves of an

---

giving the plaintiff-shareholders the opportunity to amend. *Id.* at 158. Not only that, but this distinction affected the parties' respective burdens on remand. *Id.* at 155 (explaining the inversion of the burden of persuasion for Rule 12(b)(6) motions compared to Rule 12(b)(1) motions). *See Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021) (explaining that the party invoking federal jurisdiction must establish the elements of standing).

[8]   *See Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994) ("The real party in interest analysis turns upon whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief. Of course, the governing substantive law in diversity actions is state law[.]" (citing *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *American Nat'l Bank & Trust Co. v. Weyerhaeuser Co.*, 692 F.2d 455, 459–60 (7th Cir. 1982); 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1544, 340 (2d ed.1990); and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938))). *See also Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 116 and n.4 (2d Cir. 2002) (explaining in the context of determining the real party in interest for purposes of Rule 17(a) that such determination "is a procedural matter" and so "in diversity cases federal law governs the issue of in whose name a lawsuit must be brought" but that "state-law questions may arise in determining what interest a party actually has." (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n. 22 (1968))).

exception to the prudential shareholder standing rule, that "a shareholder may not bring a claim for injury suffered by the corporation, *unless the shareholder suffered an injury independent of that suffered by the corporation.*" *Id.* (citing *Hill*, 85 A.3d at 548-49) (emphasis added). But the district court determined that the plaintiff-shareholders had failed to identify an "injury independent of any injury to the non-party-Companies" and therefore failed to state a viable claim. *Id.* at *5. The district court further noted there was no indication that the plaintiff-shareholders had the desire for leave to amend; therefore, the district court granted the defendants' motion to dismiss. *Id.*

Applying the lessons from the Third Circuit's decision in *Potter* and the district court's decision on remand in that case, the Court is satisfied in this matter that Cale met the criteria for Article III standing, but further determines he has not met the requirements of prudential standing. With respect to the former, Cale has alleged an injury-in-fact (damage to an asset held by his LLC, Brothers Farming, *i.e.*, the Property), that is traceable to Keim Lumber's alleged misconduct (supplying inadequately dried 2x12s), and such injury could be redressed by a favorable decision (damages equal to diminution of value or cost of repair, depending on the appropriate basis of a damages calculation). Though injury to the Property was a direct financial injury to Brothers Farming, and only an indirect financial injury with respect to Cale, such injury is adequate for the constitutional criteria of standing. *Potter*, 46 F.4th at 157. However, with respect to the latter requirement (prudential standing), Cale's claim falters.

Cale argues that Keim Lumber's challenge to his standing is misplaced where he personally contracted with Keim Lumber for a framing package, personally paid Keim Lumber in that transaction, and where he has been directly affected by the alleged defect of the materials supplied by Keim Lumber because he and his family reside in the home on the Property and must tolerate

12

warped floors and mold. Cale has argued that he is unlike the plaintiff-shareholders in *Potter* to the extent that he "was the actual purchaser, direct consumer and contracting party with respect to the defective lumber materials." (Docket No. 125, pgs. 10-11). He argues that, beyond establishing his Article III standing, those aspects of the transaction that gave rise to this case show that he has satisfied the prudential considerations of standing. And he argues that he falls within the exception articulated by the Supreme Court and repeated in *Potter* that "a shareholder with a direct, personal interest in a cause of action may bring suit even if the corporation's rights are also implicated." *Potter*, 46 F.4th at 158 (quoting *Franchise Tax Bd.*, 493 U.S. at 336).

The Court acknowledges Cale's arguments but is ultimately unconvinced his circumstances fall within that exception to the shareholder standing rule. "Under Pennsylvania law, 'a shareholder does not have standing to institute a direct suit for "a harm that is peculiar to the corporation and that is only indirectly injurious to the shareholder."'" *Potter*, 2023 WL 2054264, at *3 (quoting *Hill*, 85 A.3d at 548). In *Hill*, the Pennsylvania Superior Court explained that the determination of the nature of a cause of action—individual or derivative—is based on "the nature of the wrong alleged and the relief, if any, that could result if the plaintiff were to prevail." 85 A.3d at 549 (quoting 12B Fletcher Cyc. Corp. § 5911 (2013)); *Lieberman v. Corporacion Experienca Unica, S.A.*, 226 F. Supp. 3d 451, 459 (E.D. Pa. 2016) ("[T]o sue individually, rather than on behalf of the corporation—a shareholder 'must allege a direct, personal injury—that is independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery.'" (quoting *Fishkin v. Hi-Acres, Inc.*, 341 A.2d 95, 98 n.4 (Pa. 1975))). Cale seeks to rely on *Hill* to argue that because he was the party to the contract with Keim Lumber, he has legal interest to assert an individual action against Keim Lumber. But, in doing so, Cale gives short shrift to *Hill*'s discussion of the nature of requested relief. And while

13

the Court recognizes the peculiarity of this case where Cale's personal residence is owned by his LLC, and where Cale (rather than his LLC) contracted with Keim Lumber to purchase materials to build the home, the thrust of Cale's Amended Complaint is that Brothers Farming's asset was injured, and relief would benefit Brothers Farming.[9]

Cale's presentation of his damages in the Amended Complaint highlights the indirect nature of his injury. For his breach of contract claim, Cale alleges that his injury is that he "has been forced to incur, and will continue to incur, substantial expenditures to remediate the construction defects caused by the defective materials sold, supplied, and delivered by Keim Lumber." (Docket No. 52, ¶ 48). For his negligence claim, Cale alleges that he "has incurred, and will continue to incur, significant costs and expenses to remediate and repair the construction defects and resulting damages sustained as a result of the defective materials supplied by Keim Lumber." (*Id.* ¶ 55). For his breach of warranty claim, his stated injury is the same. (*Id.* ¶ 60). For Cale's intentional misrepresentation claim, he has alleged that a "direct and proximate result" of certain misrepresentations by Keim Lumber was that he "entered into an agreement to purchase the defective lumber materials and/or joists" and that he has "suffered damages, and will continue to suffer damages, as [he] will be forced to incur substantial expenditures to perform the extensive

---

[9] Relying on the terms of his contract with Keim Lumber, Cale argues that *Hill* "unquestionably confirms that [he] has a cognizable legal interest to assert an individual action" because he, "and not Brothers Farming, … was the consumer and had a contractual relationship with Keim Lumber." (Docket No. 125, pg. 13). Cale further argues that any other outcome would be illogical insofar as only a party to a contract may bring a claim for breach of contract or a UTPCPL claim. (*Id.* at 14). He thus argues that if he cannot assert such claims against Keim Lumber despite being the purchaser, and Brothers Farming cannot bring a claim because it was not party to the contract, Keim Lumber will be effectively absolved of any bad acts. (*Id.* (citing *Takeda Pharms. U.S.A., Inc. v. Spireas*, 400 F. Supp. 3d 185, 205 (E.D. Pa. 2019) ("With respect to breach of contract cases, a party is 'aggrieved' and therefore has standing to bring a breach of contract claim only if they are a party to the contract at issue."))). While the Court is not insensitive to the concern raised by Cale, it is ultimately not persuaded it has any effect on the outcome of this matter. Cale presumably perceived there to be a benefit to having Brothers Farming hold the title of his personal residence, and that decision will not now be undone to allow Cale to individually benefit from an award of damages that would go toward remedying injury to Brothers Farming's asset.

14

reparations necessary to remedy the materially defective conditions of his family's residence." (*Id.* ¶¶ 70-71). For his negligent misrepresentation claim, Cale has alleged the same injuries. (*Id.* ¶¶ 82-83). And for Cale's UTPCPL claim, he has alleged he suffered "ascertainable" money damages and that pursuant to 73 P.S. § 201-9.2, he is entitled to treble damages, costs, and reasonable attorneys' fees. (*Id.* ¶¶ 92-93).

The way Cale has therein framed his Amended Complaint shows that he is seeking the benefit of recovery to which Brothers Farming would be entitled. Cale has alleged no injury distinct to him that is separate from the injury to the Property, that is, the injuries he has alleged and the recovery he is seeking all pertain to Brothers Farming's asset: the Property. Cale, "willingly chose to create the separate entity named [Brothers Farming]" and that decision has consequences in that "[r]edress for any injury done to [Brothers Farming] belongs to [Brothers Farming] … [and Cale]'s attempt to directly recover for [Brothers Farming]'s injuries … fails." *Hill*, 85 A.3d at 557.

IV. **Conclusion**

Based on the foregoing, Keim Lumber's Motion for Summary Judgment is **granted in part** and **denied in part** insofar as the claims in Cale's Amended Complaint are **dismissed without prejudice**. An Order consistent with this Memorandum Opinion follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: February 8, 2024

Cc/ecf: All counsel of record