IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATHANIEL W. CALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 20-1763 |
| v. | ) |
| | ) |
| KEIM LUMBER COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Presently before the Court is Plaintiff Nathaniel Cale's ("Cale") Renewed Motion to Substitute Brothers Farming, LLC as Plaintiff and for Leave of Court to File Second Amended Complaint. (Docket No. 139).[1]  Defendant Keim Lumber Company ("Keim Lumber") opposes the motion.  (Docket No. 141).  The Court held Oral Argument on the motion on June 13, 2024.  (Docket Nos. 143-44).  At the conclusion of argument, the Court ordered supplemental briefing.  (Docket Nos. 146-48).  Having considered the parties' briefing and argument, the Court will grant in part and deny in part Cale's motion.

**I.   Background**

This matter is fundamentally a dispute between a contractor and lumber supplier; however, the details are much less straightforward.  Plaintiff Cale is the sole owner and member of Brothers Farming, LLC ("Brothers Farming"), a limited liability company organized in Pennsylvania. Brothers Farming is the title holder for real property located at 255 Welsh Road in Chartiers

---

[1] Days before filing the instant motion, Cale filed a Motion to Substitute Party and Motion for Leave to File Amended Complaint at Docket No. 137, which this Court promptly denied without prejudice because Cale failed to comply with the Court's practices and procedures requiring movants to, among other things, certify conferral on motions.  (Docket No. 138).  In the renewed motion, Cale has certified conferral with opposing counsel.  (Docket No. 139).

Township, Pennsylvania, having purchased the property on or about October 22, 2018. After Brothers Farming's purchase of the property, Cale sought to build a dream home for his family on the property, and in doing so he acted as the general contractor of the project. In furtherance of the project, Cale contracted with Keim Lumber for lumber materials in February 2019. Keim Lumber delivered lumber materials to 255 Welsh Road in April 2019, payment in the amount of $93,222.81 was remitted for the same, and construction of a home on the property by Cale and his subcontractor was accomplished such that Cale and his family moved into the home in February 2020.

Shortly after moving into his newly constructed home, Cale discovered unevenness of the floors and related defects, *e.g.*, unsafe doors that were extremely difficult to open. Believing that the structural defects of the home were attributable to defects in the lumber supplied by Keim Lumber, Cale filed suit against Keim Lumber on November 16, 2020, as amended[2] on March 23, 2022. (Docket Nos. 1, 52). Keim Lumber moved for summary judgment and, on February 8, 2024, this Court determined that Cale lacked prudential standing and partially granted Keim Lumber's motion. (Docket No. 134 at 5-7, 12; Docket No. 135). The Court determined that Cale lacked prudential standing because the residence at 255 Welsh Road is not his; rather, it belongs to Brothers Farming. (*Id.* at 1-2 (citing Plaintiff's Responsive Concise Statement of Material Facts in Opposition to … Keim Lumber Company's Motion for Summary Judgment)). The injuries alleged by Cale did not fall within any exception to the shareholder standing rule, *see Potter v. Cozen & O'Connor*, 46 F.4th 148, 158 (3d Cir. 2022); therefore, the Court dismissed Cale's claims

---

[2] In his original complaint, Cale alleged breach of contract, negligence, and breach of warranty. (Docket No. 1). In his Amended Complaint, he added: intentional misrepresentation, negligent misrepresentation, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. (Docket No. 52).

without prejudice. Cale now moves to substitute Brothers Farming as plaintiff and requests leave to file a Second Amended Complaint. (Docket No. 139).

## II.     Discussion

Cale seeks the Court's leave to substitute Brothers Farming as plaintiff and to amend the pleadings pursuant to Fed. R. Civ. P. 15 and 17. "Under certain circumstances, Rules 15 and 17 of the Federal Rules of Civil Procedure allow for a party to be substituted." *Rawoof v. Texor Petroleum Co.*, No. 02 C 5892, 2004 WL 3021391, at *3 (N.D. Ill. Dec. 29, 2004). Pursuant to Rule 15(a), after the time to amend as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which "should [be given] freely … when justice so requires." Fed. R. Civ. P. 15(a)(2); *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016) ("Generally, Rule 15 motions should be granted."). Pursuant to Rule 17, a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to … be substituted into the action." Fed. R. Civ. P. 17(a)(3). Like the liberality afforded by Rule 15(a)(2), amendment pursuant to Rule 17(a)(3) "should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegation as to the events or the participants." *Lefta Assocs. v. Hurley*, 902 F. Supp. 2d 559, 576 (M.D. Pa. 2012) (quoting *Advanced Magnetics v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997)).

However, despite the liberality afforded under Rules 15 and 17, both rules "have limits." *Rawoof*, 2004 WL 3021391, at *3. A district court may exercise discretion to deny amendment pursuant to Rule 15(a) if there is "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the

opposing party; [or] futility." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  These considerations—commonly referred to as the *Foman* factors—"are not exhaustive, allowing a court to ground its decision, within reason, on consideration of additional equities, such as judicial economy/burden on the court." *Id.* at 149-50.  Qualitatively, "prejudice to the non-moving party" is the factor which "is the touchstone for the denial of an amendment." *Id.* (quoting *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)).  Rule 17 likewise prioritizes avoidance of injustice. *Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681, 690 (W.D. Pa. 2011).  The availability of substitution under Rule 17 is meant to protect a party from "an understandable mistake" in identifying the proper party when that determination is "difficult." *Id.* (citing  Fed. R. Civ. P. 17, 1966 Amendment, advisory committee's note); *Blades v. Morgalo*, 743 F. Supp. 2d 85, 93 (D.P.R. 2010) ("Rule 17(a) is a means of avoiding injustice when a good faith error has been made.").[3]  Abuse of Rule 17 is to be avoided.  *See Intown Properties Mgmt., Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 171 (4th Cir. 2001) (discussing Fed. R. Civ. P. 17, 1966 Amendment, advisory committee's note).  With respect to the timing of a motion to substitute the real party in interest pursuant to Rule 17(a)(3), that "is a matter of judicial discretion and will depend on the facts of each case." *Killmeyer*, 817 F. Supp. 2d at 690 (quoting *Schafer v. Decision One Mortgage Corp.*, No. 08–5653, 2009 WL 1886071 at *6 (E.D. Pa. June 30, 2009)).

The Court previously explained that Cale sought "the benefit of recovery to which Brothers Farming would be entitled," strongly suggesting without explicitly deciding that Brothers Farming is the real party in interest where the damages at issue in this matter are tied to repair of the

---

[3] *See* Wright & Miller, § 1555 Dismissal and Relation Back, 6A Fed. Prac. & Proc. Civ. (3d ed.) ("[W]hen the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should be dismissed.").

4

residence at 255 Welsh Road. (Docket No. 134 at 14-15). Accordingly, in this matter, the Court will apply Rule 17(a)(3) even though Cale's initial pursuit of this action individually is very much at the line of not being characterizable as an understandable mistake for purposes of Rule 17(a)(3).[4]

With respect to timing, Keim Lumber first suggested that Cale might not be the real party in interest in its Answer(s). (Docket Nos. 7 at ¶ 2; 55 at ¶ 2). Keim Lumber first raised the issue by motion in its motion for summary judgment on August 11, 2023, wherein Keim Lumber argued that Cale lacked standing and had no "redressable injury" because he "is not the owner of the subject property that has allegedly been damaged"; rather, "the property is owned by 'Brothers Farming, LLC,' which is not a party to this action." (Docket No. 112 at ¶ 1). From the time of the August 11, 2023, objection, Cale waited approximately six and a half months until March 1, 2024, to seek substitution of Brothers Farming as the real party in interest. Generally, a delay shorter than one year is not so egregious as to justify refusal of leave to amend. *Arthur*, 434 F.3d at 204 (finding the delay of "less than a year" to be "neither so egregious nor unexplained as to warrant refusal of leave to amend"). *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) ("Because of Savin's unreasonable delay [of a three-year period] in requesting leave to amend, and because of the futility of her proposed amendment, we hold that the district court did not abuse its discretion in denying her Rule 15(a) motion."). Accordingly, the Court will not deny the motion to substitute under Rule 17(a)(3) as untimely.

Turning to whether allowing substitution would result in prejudice to the non-moving party, Keim Lumber argues that it would be prejudiced by the proposed substitution insofar as it has already been defending this action for years and now—after a summary judgment that was

---

[4] For instance, in *Rawoof* the court explained that the individual plaintiff should have known that the S-corporation of which he was the sole officer and stockholder was the real party in interest, so the court would not allow substitution, particularly where it would have prejudiced the defendant. 2004 WL 3021391, at *2-5.

5

largely in its favor—it will additionally have to defend Cale's fresh "bite at the apple through an entirely new theory of the case." (Docket No. 141 at 7-8). Cale counters that there's been no trial scheduled and there will be no need for further discovery after substitution. Having taken the parties' arguments under advisement, it's the Court's determination pursuant to its broad discretion regarding substitution of plaintiffs, *In re Herley Indus. Inc. Sec. Litig.*, No. CIV.A. 06-2596, 2009 WL 3169888, at *7 (E.D. Pa. Sept. 30, 2009), that prejudice does not preclude substitution in this case. Increased costs do not typically amount to prejudice and, as Cale points out, a trial has not yet been scheduled in this matter. *See Katz v. Grasso*, No. CV 20-6320, 2024 WL 967819, at *7 (E.D. Pa. Mar. 6, 2024); *see also Blades*, 743 F. Supp. 2d at 92 (rejecting "increase[d] … costs or travel time" as a basis for finding prejudice).

For the foregoing reasons, the Court will allow substitution of Brothers Farming as plaintiff; however, for the following reasons the Court will largely deny the request to amend because amendment would be futile on account of Cale's prior declarations that Brothers Farming had no direct engagement with Keim Lumber.

"In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). In the proposed Second Amended Complaint attached to the motion, Brothers Farming's allegations include the following: Brothers Farming is the titled owner of the 255 Welsh Road property; Cale is the sole owner and member of Brothers Farming and has always served as its managing member, principal, and sole decision-maker; in Cale's capacity as managing member of Brothers Farming, Cale was the general contractor of the 2019 construction project that resulted in construction of a home on the property; as "principal and managing member of Brothers Farming, Cale entered into an oral contract with Keim Lumber … with relation to" building the

6

residence at 255 Welsh Road "under which Keim lumber agreed to furnish certain lumber materials for the construction … of the residential dwelling"; as remuneration for lumber materials that were provided, "Keim Lumber was paid … $93,222.81"; construction was completed and Cale and his family moved into the residence in February 2020; and within just a few weeks of moving into the residence, Cale and his family discovered defects including unevenness that cascaded in to a number of other problems with the structural integrity of the residence. (Docket No. 139-1 at ¶¶ 2-3, 8, 17, 21, 22-25). Brothers Farming's proposed claims include: (1) Breach of Contract insofar as Cale, acting as managing member and principal of Brothers Farming, "accepted Keim Lumber's offer and proposal to furnish lumber materials" and thus "form[ed] a contractual relationship between the parties," (*id.* ¶ 45); (2) Negligence in that Keim Lumber breached its duty of care by failing to furnish appropriate construction materials (*id.* ¶ 56); (3) Breach of Warranty insofar as Keim Lumber impliedly warranted that its materials were of sound quality and in accordance with established standards when it entered into a contractual agreement with Cale "in his capacity as the managing member and principal of Brothers Farming," (*id.* ¶ 59); (4) Intentional Misrepresentation insofar as "Keim Lumber made further representations to Cale, in his capacity as the managing member and principal of Brothers Farming" that the materials it provided were "Southern Yellow Pine Lumber of Grade No. 1 quality" but despite those material assurances, Keim Lumber failed to provide materials of the agreed-upon quality (*id.* ¶¶ 65-69); (5) Negligent Misrepresentation in that Keim Lumber is alleged to have made the same misrepresentations addressed in Count IV negligently; and (6) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") insofar as "Cale, in his capacity as the managing member and principal of Brothers Farming, agreed to purchase lumber materials and/or joists from

Keim Lumber for the … construction of a residential home for personal, family and/or household purposes" which is protected by Pennsylvania law (*id.* ¶¶ 87-94).

These allegations are in stark contrast with certain statements made by Cale in the "Declaration of Plaintiff, Nathaniel W. Cale, In Opposition to Defendant's Motion for Summary Judgment" at Docket No. 124, Exhibit F.[5] Generally, a plaintiff may proffer a new theory of the case in an amended complaint and the courts are required to accept factual allegations as true. That said, "it is well-established that a court *need not* accept as true allegations contained in a complaint that are contradicted by matters of which the court may take judicial notice." *Mollett v. Leith*, No. CIV.A. 09-1192, 2011 WL 5407359, at *2 (W.D. Pa. Nov. 8, 2011) (emphasis added), *aff'd sub nom. Mollett v. Leicth*, 511 F. App'x 172 (3d Cir. 2013). *See Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994) (finding it was not an abuse of discretion for the district court to refuse to permit amendment that was repetitive or futile where it was clear that the plaintiff was "modifying its allegations in hopes of remedying factual deficiencies in its prior pleadings, even to the point of contradicting its prior pleadings").

In his prior Declaration, Cale indicated under penalty of perjury that: he "accepted the Quote" for lumber from Keim Lumber "on an individual basis and not as a member, manager or agent of Brothers Farming" (Docket No. 124, Ex. F, ¶ 12); he "remitted payment to Keim Lumber" in his "individual capacity" (*id.* ¶ 16); and that he never "signif[ied] or otherwise inform[ed] Keim Lumber Company or any of its representatives that" his residential property was "titled to Brothers Farming" (*id.* ¶ 18). Contrary to that declaration, proposed allegations in the Second Amended Complaint include that "[i]n [Cale's] capacity as the principal and managing member of Brothers

---

[5] The Court may consider matters of public record and "indisputably authentic documents" when determining whether allowing amendment of a complaint is futile. *King v. Glunt*, No. CIV.A. 12-111J, 2013 WL 141615, at *3 (W.D. Pa. Jan. 11, 2013) (citing *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004)).

… [he] entered into an oral contract with Keim Lumber … with relation to the Project, under which Keim Lumber agreed to furnish certain lumber materials for the construction and development of the residential dwelling on the Property." (Docket No. 139-1, ¶ 9).[6] The Second Amended Complaint thus largely upends the declarations before this Court that were made under penalty of perjury in an attempt to avoid dismissal. Problematically for Brothers Farming, it *needs* many of these allegations that Cale has already disavowed for the claims it would seek to pursue.

Specifically, regarding Count I for Breach of Contract, "it is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (quoting *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991)). When Cale previously disavowed having contracted with Keim Lumber on anything other than an individual basis, he cut any breach of contract claim by Brothers Farming against Keim Lumber off at the knees. Similarly, regarding Count VI—violation of the UTPCPL, 73 P.S. § 201-

---

[6] Keim Lumber argues that the shift in pleadings goes so far as to be a sham pleading which warrants denying Cale's motion and dismissing the action. Keim Lumber primarily relies on *Scott v. Close*, wherein the court observed that the "180 [degree] reversal of [the plaintiff's] allegations of … injury … suffered at the hands of dismissed defendants … right after plaintiff was advised that those allegations negated the liability of the only remaining defendant is perhaps the textbook example of sham pleading." No. 3:21-CV-46-SLH-KAP, 2021 WL 11699255, at *2 (W.D. Pa. Aug. 3, 2021), *report and recommendation adopted*, No. 3:21-CV-46, 2022 WL 20563935 (W.D. Pa. Apr. 21, 2022). In that case the plaintiff sought to allege deliberate indifference to his serious medical needs. *Id.* at *1. The plaintiff had originally alleged merely that the defendant knew he was diabetic, and that the plaintiff said his blood sugar was low and he wanted something to eat. *Id.* The plaintiff had also alleged he had been unable to sleep. *Id.* Then, in the amended complaint, the plaintiff alleged that he told the defendant that he would fall into a coma if the defendant did not check his blood sugar and that he did, in fact, fall into a short-term coma and that his blood sugar was dangerously low when he awoke. *Id.*

The court in that matter explained that it was permitted to strike sham pleadings even though plaintiffs are generally permitted to contradict earlier allegations in subsequent amended complaints. *Id.* at *1-2 (citing *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 172 (3d Cir. 2013) (explaining that the liberal amendments standard permits amendment of the complaint even when proposed amendments "flatly contradict[]" earlier allegations)). However, in this matter the Court will not go so far as to label the Second Amended Complaint a "sham pleading," having already determined it will not credit new factual allegations that are contradicted by Cale's Declaration.

1 et seq.—it would be futile to permit the proposed amendments where Cale has previously declared that he accepted Keim Lumber's quote and remitted payment in his individual capacity. (Docket No. 124, Ex. F at ¶¶ 12, 16). That prior admission defeats any attempt by Brothers Farming to bring a claim against Keim Lumber for having violated the UTPCPL at the first element of such a claim: that the individual must establish "that he or she is a purchaser or lessee." *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646 (Pa. Super. Ct. 1999); 73 P.S. § 201-9.2 ("Any person *who purchases or leases* goods or services … and thereby suffers any ascertainable loss … may bring a private action" (emphasis added)). Brothers Farming cannot straight-facedly allege that it was the purchaser of lumber materials when Cale has previously indicated that he would testify to personally purchasing lumber from Keim Lumber in his individual capacity.

Unlike Counts I and VI, the Court will permit amendment to the extent proposed in Brothers Farming's Count III for Breach of Warranty. Under Pennsylvania law, warranties only "extend[] to any natural person who is in the family or household of [a seller's] buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." 13 Pa. C.S.A. § 2318. While Brothers Farming would not appear to fit within the scope of persons identified by the plain language of Pennsylvania's Section 2318, the Pennsylvania courts have expanded who may sue for a breach of implied warranty of merchantability, deciding over the years that "anyone injured by the defective product may sue, and anyone in the distributive chain may be sued." *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1245 (Pa. Super. Ct. 2004) (explaining further that "developing case law may extend the Commercial Code's warranty protections to those outside the narrow class of persons enumerated in § 2318"). In the Second Amended Complaint, Brothers Farming would allege that it was injured by substandard lumber traceable to Keim Lumber, albeit

10

that had passed through Cale.  Under Pennsylvania law, that claim does not appear to be futile.  Keim Lumber argues that the warranty claim, even if it were viable, is time barred because warranty claims are subject to a four-year statute of limitations.  However, under Rule 17(a)(3), when substitution of the real party in interest is allowed, the "action proceeds as if it had been originally commenced by the real party in interest." *See Green v. Daimler Benz, AG*, 157 F.R.D. 340, 344 (E.D. Pa. 1994) ("[A]s long as the other requirements of Rule 17(a) are met, [Rule 17's] mandatory relation-back provision protects the real party in interest from an expired statute of limitations as long as the named plaintiff filed within the limitations period.").

That leaves Counts II, IV, and V, for negligence, intentional misrepresentation, and negligent misrepresentation.  These claims in tort are barred by Pennsylvania's gist-of-the-action doctrine, which "precludes a party from raising tort claims where the essence of the claim actually lies in a contract that governs the parties' relationship."  *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 718 (Pa. Super. Ct. 2005).  Where, as here, the allegations in the Second Amended Complaint would be that Keim Lumber both "breached its duty of care and acted negligently, by failing to furnish lumber materials in accordance with the underlying construction drawings and architectural plans," *and* failed to observe applicable standards of ordinary care, it's apparent that the claim concerns an alleged breach of duty owed by contract. (Docket No. 139-1 at ¶ 56).  The same is true for the intentional misrepresentation allegations (that Keim Lumber induced a purchase by making false representations that it would provide materials in accordance with the construction plans and architectural drawings provided by Cale) and negligent misrepresentation allegations (that Keim Lumber made representations about the appropriateness of its product for Cale's designs negligently, if not intentionally), in that the duty Brothers Farming would allege to have been breached was one of contract.  That is, these tort claims just attempt to reframe a duty

11

that was primarily owed pursuant to a contract. For that reason, "the claim is to be viewed as one for breach of contract." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). Accordingly, the Court finds that it would be futile to permit amendment related to these tort claims.

### III. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's Renewed Motion to Substitute Brothers Farming, LLC as Plaintiff and for Leave of Court to File Second Amended Complaint. An appropriate Order to follow.[7]

*s/ W. Scott Hardy*<br>
W. Scott Hardy<br>
United States District Judge

Dated:        January 30, 2025

cc/ecf:       All counsel of record

---

[7] The Court acknowledges but will not address Keim Lumber's argument that the courts in this Circuit should abandon dismissal without prejudice after granting summary judgment. *Borelli v. City of Reading*, 532 F.2d 950, 951 (3d Cir. 1976) ("[A]n implicit invitation to amplify the complaint is found in the phrase 'without prejudice.'").